**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Criminal No. 7:21-CR-0036** |
| **WASIL RAFAT FAROOQUI** | ) | |
| | ) | |

## SENTENCING MEMORANDUM OF THE UNITED STATES

The United States of America, by counsel and pursuant to Rule 45 of the Federal Rules of Criminal Procedure and the sentencing order of this Court, respectfully submits in the case against the Defendant, Wasil Rafat Farooqui ("Farooqui" or the "Defendant") that a term of imprisonment of 36 months,[1] which is at the high end of the agreed-upon (c)(1)(C) range, is an appropriate sentence, given the seriousness of the case. This recommendation takes into account several other significant factors in the case. First, the proposed sentence recognizes that Farooqui pleaded guilty, accepting responsibility for the conduct contained in the Information. Had he proceeded to trial on the Superseding Indictment and been convicted, Farooqui would have faced a higher statutory maximum, as well as the applicable terrorism enhancement, pursuant to USSG Section 3A1.4, which would have dramatically increased his guideline range. The recommendation also accounts for the fact that Farooqui has been diagnosed during his Bureau of Prisons mental health evaluation, and previous evaluations, with a severe mental disorder, as well as malingering. In support of its sentencing recommendation, the government offers the following consideration of the factors set forth in 18 U.S.C. § 3553(a) and pertinent sentencing guidelines:

---

[1] The United States requests that this sentence be ordered to run consecutive to the state sentence for which Farooqui is currently serving from a stabbing that occurred in August 2016.

1.      *Relevant factual and procedural history.*

On March 29, 2016, the Roanoke FBI office became aware that Farooqui had traveled the day before to Gaziantep, Turkey, which is approximately 30 miles from the border of Syria. In mid-2016, individuals who were not citizens of Syria or Iraq and were interested in fighting with the Islamic State of Iraq and the Levant ("ISIS" or "ISIL"), traveled to join ISIS. The border of Syria and Turkey was a known entry point for such individuals at this time. Given this information, the FBI was concerned that Farooqui was traveling to Turkey for this purpose and began investigating his travel.

Farooqui's family was also concerned about him and alerted law enforcement about his departure. Specifically, Farooqui's family notified the Metropolitan Washington Airport Authority Police Department that polices Dulles International Airport, which was Farooqui's scheduled departure airport. The MWAAP dispatched an officer, who met Farooqui at his gate, and spoke with Farooqui. Farooqui stated that he was traveling to Turkey to visit his uncle, though, in truth, Farooqui had no family there. In addition to speaking with Farooqui, the officer photographed his travel documents, including his Virginia driver's license. When they were finished speaking, the officer waited at Farooqui's gate and watched him depart the gate area to board the plane several minutes later. Farooqui never left the area before boarding.

Farooqui flew to Gaziantep, and when he landed, he called his father, who encouraged him to return to the United States. Farooqui was able to change the return date on his ticket and return home. Specifically, Farooqui returned to Dulles International Airport on March 30, 2016. Upon his arrival, he was interviewed by FBI Special Agents. During the first interview, Farooqui stated that he understood that Gaziantep, Turkey was currently a hotspot. He also indicated he knew about ISIS in Iraq and Syria, but then contradicted his earlier acknowledgement and claimed he had never heard anything about Gaziantep.

When asked about why he went to Gaziantep, Farooqui denied going to join Dawlah, a common term for ISIS. Instead, he stated that he traveled to Turkey because he was in a fight with his parents and wanted to get away from his family for a time. Farooqui went on to state that he wanted to go to an Islamic country and considered other locales to include Saudi Arabia, Iraq, Afghanistan, Iran, and Pakistan, but ultimately settled on Turkey because it seemed safer. When asked specifically about Gaziantep, Farooqui stated that he chose it as a destination because he was looking at airports in Turkey and it was the smallest and farthest away from Istanbul, so he thought it would be more difficult for his parents to locate him there. Farooqui also admitted that he did not know anyone in Gaziantep.

Farooqui provided contradictory statements regarding what he did in Gaziantep. Initially, Farooqui said he never left the airport after arriving. He later said he walked out of the airport and it was a dark, foggy night; he could not read anything because everything was written in a foreign language and no one was speaking English. Farooqui said he then re-entered the airport and walked around trying to decide what to do now that he was at his destination. He told the agents that he decided, "I can't do this," and went to security at the airport.

Regarding his plan of how to support himself in Gaziantep, Farooqui claimed he spent all of his money on his flight to Turkey and only had $9 remaining in his bank account. He could not explain how he was even going to pay for his parking at Dulles when he returned. When asked how he planned to survive in Turkey for the duration of his trip without any money, Farooqui simply stated, "I didn't think it through."

While he was traveling, Farooqui had a small, paper notebook in his possession. It included handwritten notes describing the women of paradise awarded to Islamic fighters in death. The final handwritten note on this particular page was, "Hur al Ayn – Anwar Awlaki (reasons to leave your wife and going to jihad.)" The notebook also contained references to "GZT," the airport code for

3

Gaziantep's airport, which stated, "once to GZT," "dispatch identified," "pass," "phone tech" ("phone" is crossed out), "change clothes," and "anything slowing you" ("you" is crossed out).

Agents also asked for Farooqui's driver's license, as individuals traveling to Syria to join a Foreign Terrorist Organization were known to discard identifying documents upon reaching their destinations or during their trip. Farooqui did not have his license with him during the interview and provided no plausible explanation of its whereabouts.

Approximately an hour later, agents interviewed Farooqui again. They again asked him about his Virginia driver's license. Farooqui again stated that he did not take it with him to Turkey, but left it in his vehicle before departing. The agents then specifically asked Farooqui about his interaction with the MWAAPD police officer, and Farooqui acknowledged MWAAPD interviewed him and photographed his driver's license at his departure gate. When asked to reconcile these facts, Farooqui said he returned to his car after he was interviewed by MWAAPD because he forgot his plane ticket to Gaziantep and because he wanted to leave his driver's license in his car. Farooqui said he then returned and re-entered airport. According to his statement, Farooqui would have had to go back through security and return to the gate to make his flight. At this time, the agents advised Farooqui that it is a crime to lie and Farooqui acknowledged that he knew this. Farooqui then reiterated his story about going back to his car for his ticket and leaving his license there. He again stated that he did all of this after speaking with airport police.

Farooqui consented to the search of his car, and agents executed the search in the Dulles parking lot. They did not recover Farooqui's license in the vehicle. Given the distance Farooqui would have had to travel after his documented encounter with the police officer at the gate, which Farooqui also confirmed, it would have been impossible for him to return to his car, go back through security, and make his flight. Accordingly the statement Farooqui made to the agents was not only false, it was also impossible.

4

The location of Farooqui's driver's license mattered to the FBI agent as they were investigating Farooqui's travel to Turkey, because they were looking at his possible support of ISIS. Evidence of such support could include whether he had abandoned or carried with him any of his identification documents, including his Virginia driver's license.

On September 20, 2021, Farooqui pleaded guilty to a single-count Information, charging him with violating 18 U.S.C. Section 1001 for his statements made to the FBI regarding his driver's license. His plea was pursuant to a Rule 11(c)(1)(C) plea agreement, including a 24-36 month sentencing range. Farooqui pleaded guilty to the Information after he had been charged by a March 10, 2021 Superseding Indictment, which included the language, "involving international terrorism," which would have greatly increased the sentence Farooqui would face, should he have been convicted of the charges contained therein.

2.    *Sentencing Standard*. Since the Supreme Court's decision in *United States. v. Booker*, 543 U.S. 220 (2005), district courts generally follow a four-step sentencing process: (1) proper calculation of the advisory sentencing guideline range; (2) consideration of the factors set forth in 18 U.S.C. § 3553(a) to determine whether a sentence within the advisory range is warranted; (3) application of any applicable statutory sentence limitations; and (4) delineation of reasons for selecting a particular sentence. *U.S. v. Green,* 436 F.3d 449, 456 (4th Cir. 2006); *see also Booker*, 543 U.S. at 260-65; 18 U.S.C. § 3553(a).

3.    *Calculation of applicable guideline range*. As the PSR correctly notes, and as Farooqui stipulated to in the Plea Agreement, the base offense level under the sentencing guidelines for the offense is 14. PSR ¶ 32. The offense level drops to 12 following adjustment for Farooqui's acceptance of responsibility. PSR ¶ 39. The resulting guideline range is 12-18 months, based on Farooqui's criminal history category of II. PSR ¶¶ 46, 67. However, Farooqui's plea to the Information must be viewed in light of the sentence he faced, had he proceeded on the

5

pending Superseding Indictment, which included the "involving terrorism" language, and a significantly higher statutory maximum and attendant guideline range. As will be discussed below, the Government's recommendation of a 36 month sentence, consecutive to Farooqui's state sentence is appropriate in light of the various statutory sentencing factors.

3.    *3553(a) factors*. Farooqui likely seeks a sentence of 24 months, which is at the low end of the Rule 11 (c)(1)(C) range.[2] For the reasons it will articulate below, which include the seriousness of the offense, providing a just punishment for making false statements to the FBI during their investigation, and the deterrence effect of such a sentence, the government seeks a sentence of 36 months, consecutive to Farooqui's state sentence.

First, Farooqui's conduct in this case is quite serious. When an individual travels to the border of Syria, with virtually no personal belongings and no plausible explanation for his travel, the FBI conducts a significant and protracted investigation regarding that travel. Such an investigation relates to the potential safety and security of our borders and our foreign servicemen and women. In the instant case, the FBI inquired about his belongings and specifically, Farooqui's driver's license. Such items are often discarded when an individual travels abroad without intent of returning home. When they ask such questions, the integrity of the FBI's investigation demands honest answers. Farooqui not only traveled to Gaziantep, Turkey, but also provided false statements when he was interviewed. His actions and untruthfulness amount to very serious conduct that must be punished.

As to Farooqui's history and characteristics, Farooqui's diagnosed mental illness is well known. PSR ¶¶ 56-60. As detailed in his most recent mental health evaluation conducted by

---

[2] Farooqui may also ask that his federal sentence be run concurrent to his state sentence. Should he ask for the, the Government would strongly object, given it would render the federal sentence meaningless, and leave his March 2016 conduct, which was a serious federal offense, unvindicated.

BOP in 2021, Farooqui has been diagnosed with severe mental disorders by several doctors evaluating him since 2016.  The evaluation also makes a specific finding, consistent with prior evaluations, that Farooqui is malingering, and he has repeatedly been found competent to stand trial and face his charges.  PSR ¶ 57.  The reports also make clear that Farooqui has repeatedly not followed through with his treatment and medication necessary for treating his mental disorders.  He did not follow up with outpatient treatment, was unwilling to be admitted to receive additional treatment at Carilion without police intervention, and stopped taking his medication.  PSR ¶¶56-59.  The BOP's 2021 Evaluation provides additional details regarding Farooqui's refusal to participate with and advance his treatment.

While it is expected that Farooqui will advance his mental health diagnoses as a means of mitigation or explaining his conduct in his case, this should not be so.  Many millions of Americans suffer from significant mental health issues.  Very few of these individuals have traveled abroad to places they should not go, for unexplained reasons, and then repeatedly lied to the FBI about the details of their travel during the course of an investigation.

It is also worth noting that Farooqui has admitted his conduct and accepted responsibility for his actions, and was willing to plead guilty, saving the government from preparing for and executing a trial in this matter.  The government has acknowledged this, as well as the ranging mental health diagnoses, including malingering, and Farooqui's varied responses to these diagnoses, in its offering the (c)(1)(C) range contemplated in the Plea Agreement by the parties, which is significantly below the range Farooqui would have faced if he proceeded with such a trial.

Finally, and perhaps most importantly, the government seeks a sentence of 36 months of incarceration to provide adequate deterrence.  Fortunately, investigations into foreign travel are

somewhat rare in this District.  They are, however, some of the most significant and urgent matters the FBI encounters, as they directly affect our national security.  When the FBI investigates these important matters, those involved must speak honestly with the FBI so that it may do carry out a fulsome investigation.  Sentencing Farooqui to a significant sentence of 36 months would send a strong message of deterrence that individuals should not travel to the borders of countries they should not go, under dubious circumstances, as it is dangerous for the individual and our country.  Further, when such an investigation occurs, any individuals involved must be honest with the FBI about any and all material matters related to that investigation.  Such a sentence would also specifically deter Farooqui from any future illegal conduct.

4.    *Restitution*.   As noted in the PSR, restitution is inapplicable in this case.

5.    *Forfeiture*.  Forfeiture is not applicable in this case.

6.    *Sentencing exhibits*.  The United States does not intend to introduce any documentary evidence at sentencing.

7.    *Sentencing witnesses*.  The United States does not intend to present witness testimony during the sentencing hearing but will have a case agent available to testify if necessary.

## **CONCLUSION**

Taking the foregoing factors into account, the United States respectfully requests that this Court impose a sentence of 36 months of imprisonment, which is sufficient, but not greater than necessary to comport with applicable statutory and advisory sentencing objectives.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney

/s/ Zachary T. Lee

8

Assistant United States Attorney
Western District of Virginia
180 West Main Street
Abingdon, Virginia 24210
276-628-4161
276-628-7399 (fax)
USAVAW.ECFAbingdon@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 18, 2022, I caused the foregoing to be electronically filed with

the Clerk of the Court using the CM/ECF system, which will send notification of such filing to

counsel for defendant.

/s/ Zachary T. Lee
Assistant United States Attorney

9

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 20th day of January, 2022, I electronically filed the Sentencing Memorandum of the United States with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

<u>s/</u>
Assistant United States Attorney